**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Leland Neal,<br><br>　　　　Plaintiff,<br><br>v.<br><br>B Marc Neal, et al.,<br><br>　　　　Defendants. | No. CV-16-08291-PCT-DLR<br><br>**ORDER** |

Before the Court are the following: Defendants' motion to dismiss (Doc. 38), Plaintiff's motion for leave to file a second amended complaint (Doc. 43), Defendants' motion to strike (Doc. 60), and Plaintiff's motion for leave to file a second motion for default judgment (Doc. 84). For the following reasons, the Court grants Defendants' motion to dismiss and denies the remaining motions.

**I. Background**

This case concerns the Claude K. Neal Family Trust ("Trust"), a revocable trust created by Plaintiff Richard Leland Neal's parents, Claude and Rita Neal (individually, "Claude" and "Rita," and collectively "Trustors") on August 15, 1972. (Doc. 27 ¶¶ 15, 17-18, 20.) The Trust established that, at the death of either Trustor, the Trust estate would be divided into two sub-trusts: Trust A and Trust B. (Doc. 27-1 at 22.) These sub-trusts both were amendable and revocable while the Trustors were living. The beneficiaries of the Trust were the Trustors' two sons, Plaintiff and Defendant B. Marc

Neal ("Marc"), but only upon the death of the surviving Trustor. (*Id.* at 25.)

On August 19, 1988, the Trustors amended the Trust to provide that Plaintiff would forfeit his entire interest under the Trust if he litigated over the Trust in any way. The amendment also removed Plaintiff as a successor trustee and reduced his interest in the Trust to 25%. (*Id.* at 38-40.)

Claude passed away on August 2, 1989 and, as a result, sub-trusts A and B were created. (Doc. 27 ¶ 17.) At this point, Trust A remained revocable and amendable and Trust B became irrevocable and unamendable. (Doc. 27-1 at 23-24, 31.) On October 25, 2001, Rita amended Trust A to remove Plaintiff as a beneficiary, leaving Plaintiff with a potential 25% interest in Trust B only.[1] (Doc. 27-1 at 42-43.) Rita later passed away on September 27, 2015. (Doc. 27 ¶ 18.) Accordingly, on October, 26, 2015, Marc, though counsel and in his capacity as trustee of Trust B, sent a letter to Plaintiff providing certain information required by Arizona law. (Doc. 27-1 at 2-3); *see* A.R.S. § 14-10813.

## II. Procedural History

Plaintiff accuses Marc and Marc's two sons, Defendants Richard Wayne Neal ("Richard") and Michael Kenneth Neal ("Michael"), of violating the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act through their management of Trust assets. He also accuses Marc and Richard of breaching their fiduciary duties under the Trust. (Doc. 27.) Plaintiff initiated this action in December 2016 (Doc. 9), and from there the proceedings snowballed.

In March 2017, Plaintiff filed a motion for a temporary restraining order ("TRO"), in which he asked the Court to temporarily enjoin Marc and Michael from removing a billboard from Trust property. (Doc. 16.) The Court held a telephonic conference on March 13, 2017 to discuss Plaintiff's TRO request. During that conference, the parties stipulated that Defendants would take no legal action to have the billboard removed until this litigation is resolved, thereby mooting Plaintiff's motion for a TRO. (Doc. 19.)

---

[1] The Court is not tasked with adjudicating whether Plaintiff has forfeited his interest in Trust B by bringing this action.

Nonetheless, Plaintiff subsequently filed a motion for preliminary injunction seeking the same relief that the parties had stipulated to during the March 13, 2017 telephonic conference. (Doc. 20.) The Court denied the motion as moot. (Doc. 22.)

On April 6, 2017, Defendants moved to dismiss Plaintiff's complaint, arguing that Plaintiff's breach of fiduciary duty claim is barred by the statute of limitations, the complaint failed to state plausible RICO claims, and Plaintiff lacks standing to assert any claim related to the Trust. (Doc. 24.) Prior to filing their motion, Defendants conferred with Plaintiff to determine whether an amendment could avoid the need for a motion to dismiss, but concluded that Plaintiff's proposed amendments did not remedy the defects Defendants had identified. (Doc. 24-1 at 3-4.) Nonetheless, instead of responding to Defendants' motion to dismiss, Plaintiff filed his amended complaint as a matter of course. (Doc. 27.)

On April 26, 2017, the Court extended Defendants' deadline for filing a reply in support of their motion to dismiss. The Court also extended Defendants' deadline for responding to Plaintiff's amended complaint until fourteen days after the Court ruled on the motion to dismiss. (Doc. 29.) Later, on May 2, 2017, the Court denied Defendants' first motion to dismiss as moot in light of the filing of Plaintiff's amended complaint. (Doc. 30.)

On May 15, 2017, Defendants timely lodged a proposed enlarged motion to dismiss the amended complaint and concurrently moved for leave to exceed the page limits. (Docs. 34-36.) The Court granted Defendants' motion to exceed the page limits two days later and directed the Clerk of the Court to file the lodged motion. (Docs. 37-38.) Instead of responding to Defendants' motion to dismiss, however, Plaintiff moved for leave to file yet another amended complaint. (Doc. 43.)

Around this time, Plaintiff also filed a series of meritless motions. First, on May 4, 2017, Plaintiff moved for a preliminary injunction to enjoin Defendants "from conducting activities that would injure or damage [him] directly or indirectly in any way, shape, or form, until such time as [his] cause of action . . . can be heard." (Doc. 32.)

Later, on June 26, 2017, Plaintiff filed another motion for a TRO, this time asking the Court to order Defendants to continue paying his rent and utility bills. (Doc. 52.) The next day, Plaintiff filed a "Motion For Exemption to Amended Red Line Comparison or As An Alternative A Motion for An Extension of Time to Leave and Amend Red Line Comparison," which the Court later interpreted as a veiled motion to file a third amended complaint. (Docs. 53, 54 at 2.)

Further complicating matters, on June 17, 2017, non-party Patricia Lewis filed a motion to intervene in this action. (Doc. 48.) Lewis argued that she is a judgment creditor in a state court lawsuit against Plaintiff, and that resolution of this action in her absence could adversely affect her ability to recover state court judgment against Plaintiff. (*Id.*)

On June 30, 2017, the Court issued an order denying all three of Plaintiff's motions and advising Plaintiff that, although he is self-represented, he still must follow the same rules of procedure that govern all other litigants. (Doc. 54.) Given Plaintiff's pattern of meritless filings, and in an effort to avoid further docket congestion, the Court ordered that Plaintiff shall not file another motion for injunctive relief, leave to amend, or similar type of motion without first seeking leave of Court. (*Id.* at 3.)

Shortly after the Court issued its order, Plaintiff filed an untimely response to Defendants' motion to dismiss. (Doc. 57.) Defendants, in turn, moved to strike Plaintiff's untimely response. (Doc. 60.) Then, on July 24, 2017, Plaintiff filed a motion for default judgment, arguing that Defendants should be defaulted because they did not file an answer to the amended complaint. (Doc. 64.)

On July 26, 2017, the Court denied Plaintiff's motion for default judgment. The Court explained that Defendants timely responded to the amended complaint by filing a motion to dismiss, and that Defendants would be required to file an answer only if their motion to dismiss is denied. (Doc. 65.) In that order, the Court also expressed concerns about the number of mostly meritless motions being filed. "To prevent the docket from becoming more unruly than it already is," the Court ordered that "the parties may

complete briefing on motions that have already been filed, but until further order no party shall file any new motion without leave of Court." (*Id.* at 2.)

Not long after the Court issued its order, Plaintiff moved for leave to file a motion for reconsideration of his motion for default judgment (Doc. 67) and motion for leave to file an amended motion for default judgment (Doc. 69). The Court denied both requests. (Doc. 71.)

On October 13, 2017, with the Court's permission, Defendants filed a Motion Regarding Judgment Creditor's Underlying Judgment as Being Void as a Matter of Law. (Doc. 78.) In that motion, Defendants argued that Lewis' underlying judgment against Plaintiff is unenforceable because it was not timely renewed. Accordingly, Defendants asked the Court to declare Lewis' underlying judgment void, deny her motion to intervene, and award Defendants their reasonable attorneys' fees. (*Id.*) In response, Lewis withdrew her motion to intervene. (Doc. 79.) Defendants, however, continued to press the attorneys' fees issue. (Doc. 81.)

On December 4, 2017, the Court denied Defendants' motion regarding Lewis' underlying judgment as moot in light of the withdrawal of Lewis' motion to intervene. (Doc. 83.) The Court also denied Defendants' request for attorneys' fees. (*Id.*)

Since then, Plaintiff has filed a motion for leave to file a second motion for default judgment. (Doc. 84.) Plaintiff also filed a notice declaring that he has standing as beneficiary of the Trust and purporting to "assign[] the administrative hearing officer, Douglas L. Rayes as the sole Trustee."[2] (Doc. 86.)

**III. Legal Standard**

Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." The task when ruling on a motion to dismiss under Federal Rule of Civil

---

[2] Although the intended effect of this notice is unclear, the Court is not the trustee of Trust.

- 5 -

Procedure 12(b)(6) "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When analyzing a complaint for failure to state a claim for relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). Nor is the court required to accept as true "allegations that contradict matters properly subject to judicial notice," or that merely are "unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

To avoid dismissal, the complaint must plead sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557.)

**IV. Discussion**

Plaintiff's amended complaint is far from short and plain. It spans 71 pages and includes 145 pages of exhibits. Moreover, despite its length, the amended complaint contains few factual allegations and instead is filled mostly with recitations of law and legal conclusions masquerading as facts. For this reason, Defendants argue that Plaintiff's complaint "is best understood by reviewing his prayers for relief." (Doc. 38 at 6.) Plaintiff asks the Court to: (1) dissolve Rita's amendment to Trust A; (2) dissolve "all deeds that transferred property from the Trust estate to others;" (3) dissolve "deeds or

documents that transferred property from the Trust back to Rita . . . or others on or about December: 06 and 14, of 2006;" (4) order Defendants "to disgorge to the Trust, the money unlawfully taken from the Trust by the defendants;" (5) enjoin Defendants "from continuing [to] unlawfully interfer[e] with the Trust and Plaintiff's business and property;" and (6) impose "reasonable restrictions on the future activities and conduct of the Defendants regarding the Trust and Plaintiff's business and property." (Doc. 27 ¶¶ 275-80.) Finally, Plaintiff adds a request under RICO "for actual damages and treble damages, attorney fees, and cost[s] against Defendants." (*Id.* ¶ 281.) Defendants contend that these prayers for relief "make it clear that this is 'at heart a simple trust dispute.'" (Doc. 38 at 6.) Indeed, all but one of Plaintiff's prayers for relief corresponds to his breach of fiduciary duty claim.

## A. RICO Claims

Having carefully reviewed Plaintiff's voluminous amended complaint, the Court agrees with Defendants that it fails to state a plausible RICO claim. Plaintiff's RICO claims are brought under 18 U.S.C. § 1962(a), (c), and (d), which in relevant part provide:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .
>
> . . .
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

The statute enumerates various criminal acts that qualify as "racketeering activity" (for example, bribery, wire fraud, obstruction of justice, witness tampering, etc.), defines "pattern of racketeering activity" as at least two acts of racketeering activity occurring within a ten-year period, and defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(1), (4), (5).

Despite its verbosity, Plaintiff's amended complaint contains few statements that fairly can be characterized as factual allegations. Instead, Plaintiff asserts in a conclusory manner that Defendants violated RICO by recording various deeds. None of these allegations, however, plausibly establish any of the predicate criminal acts outlined in § 1961(1). It is apparent from the paucity of factual allegations and the nature of Plaintiff's prayers for relief that he is attempting to improperly shoehorn a state law breach of fiduciary duty claim into RICO. *See Walter v. Drayson*, 496 F. Supp. 2d 1162, 1164 (D. Hawai'i 2007). Moreover, the Court has reviewed Plaintiff's proposed second amended complaint and finds that it, too, fails to state plausible a RICO claim. (Docs. 43.) Plaintiff's RICO claims therefore are dismissed with prejudice.

### B. State Law Breach of Fiduciary Duty Claim

This leaves Plaintiff's state law breach of fiduciary duty claim against Marc and Richard. Defendants argue that Plaintiff lacks standing to assert any of his claims because he disclaimed all interest in the Trust in a separate state court lawsuit. They also argue that Plaintiff's breach of fiduciary duty claim is untimely. The Court will not address these arguments, however, because it declines to exercise supplemental jurisdiction over Plaintiff's state law claim.

"A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968 (9th Cir. 1981). Federal courts generally derive jurisdiction in one of two ways. First, federal courts have jurisdiction over cases arising under federal law. 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1367, if the Court has jurisdiction over certain claims arising

under federal law, it may also exercise supplemental jurisdiction over related state law claims for which there otherwise would not be an independent basis for jurisdiction. Second, federal courts have jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Importantly, the Court has an independent duty to determine whether it has subject matter jurisdiction over cases before it. *See United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004).

Plaintiff alleges that Richard is a Nevada resident. (Doc. 27 ¶ 13.) The amended complaint does not disclose the state of Marc's residency. (*Id.* ¶ 12.) On this point, however, Plaintiff's proofs of service are informative. On March 6, 2017, Plaintiff filed proof that he had properly served Marc. (Doc. 14.) According to that document, Plaintiff served Marc by leaving "the summons at [his] residence or usual place of abode with Michael Kenneth Neal, a person of suitable age and discretion who resides there." (*Id.*) Plaintiff's amended complaint alleges that Michael resides in Kingman, Arizona, and Plaintiff's proof of service upon Michael confirms this. (Doc. 15; Doc. 27 ¶ 14.) If Michael and Marc share a residence, then Marc must also reside in Arizona. Accordingly, this action is not between citizens of different states because Plaintiff, like Marc, is an Arizona resident. *See Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983) ("Section 1332 confers jurisdiction on federal courts when each defendant is a citizen of a different state from each plaintiff.").

This means that Plaintiff's breach of fiduciary duty claim, which arises under Arizona state law, is before the Court on supplemental jurisdiction only. "Pursuant to the supplemental jurisdiction statute, when a district court dismisses on the merits a federal claim over which it had original jurisdiction, it may then decline to exercise supplemental jurisdiction over the remaining state claims, subject to the factors set forth in § 1367(c)(1)-(4)." *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001). Section 1367(c) instructs the Court to consider whether:

> (1) the claim raises a novel or complex issue of State law,

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Here, the Court finds that these factors weigh against the continued exercise of supplemental jurisdiction. In this order, the Court dismisses all claims over which it has original jurisdiction. Moreover, although three of Plaintiff's four claims are brought under RICO, it is apparent from the allegations and Plaintiff's prayers for relief that, at its core, this is a state law trust dispute. Finally, Defendants have raised the issue of whether Plaintiff has disclaimed his interest in the Trust through statements he made in a separate state court lawsuit to which he is a party. Given this additional wrinkle, the Court finds that Arizona's state courts are better suited to resolve the standing and breach of fiduciary duty issues raised here. The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's breach of fiduciary duty claims and will dismiss them without opining on their merits.

**V. Conclusion**

For the foregoing reasons, the Court finds that Plaintiff has failed to state a plausible RICO claim, and that his proposed second amended complaint does not remedy the defective claims. Moreover, the Court finds that, in the absence of a federal claim, there is no compelling reason for the continued exercise of supplemental jurisdiction over Plaintiff's breach of fiduciary duty claim, which arises under Arizona state law and is against non-diverse defendants. Accordingly,

**IT IS ORDERED** as follows:

1. Defendants' motion to dismiss (Doc. 38) is **GRANTED** as stated herein.

2. Plaintiff's motion for leave to file a second amended complaint (Doc. 43) is **DENIED** because the proposed amendments are futile.

3. Defendant's motion to strike (Doc. 60) is **DENIED** as moot.

4. Plaintiff's motion for leave to file a second motion for default judgment (Doc. 84) is **DENIED** as moot.

5. Defendants may separately move for attorneys' fees in a manner that complies with LRCiv 54.2.

6. The requirement that parties seek leave of Court before filing new motions is hereby dissolved.

7. The Clerk of the Court is directed to terminate this case.

Dated this 13th day of March, 2018.

Douglas L. Rayes
United States District Judge